**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jake's, Ltd., Inc., a Minnesota corporation, and Richard J. Jacobson,

Plaintiffs,

v.

The City of Coates, a municipal corporation,

Defendant.

Civil No. 00-192 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Randall D.B. Tigue, Esq., Tigue Law Office, 2940 Pillsbury Avenue South, Suite 200, Minneapolis, Minnesota 55408, appeared on behalf of Plaintiffs.

James J. Thomson, Esq. and Joe Y. Yang, Esq., Kennedy & Graven, 470 Pillsbury Center, 200 6th Street South, Minneapolis, Minnesota 55402, appeared on behalf of Defendant.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on October 13, 2000, pursuant to Defendant's and Plaintiffs' cross-motions for summary judgment. In the Complaint, Plaintiffs allege that the enactment of certain zoning and licensing provisions is in violation of Minn. Stat. § 462.357, Title 42 U.S.C. § 1983, and the First and Fourteenth Amendments of the United States Constitution. Plaintiffs concede, however, that Counts I and II of their complaint are moot in light of Defendant's ordinance enactments, on July 10, 2000, subsequent to the initiation of the current litigation. Consequently, Plaintiffs seek attorney's fees and costs with respect to Counts I and II. Defendant counter-claims requesting declaratory and injunctive relief stating that certain relevant ordinances are valid. For the reasons set forth below, Plaintiffs' motion is denied and Defendant's motion is granted.

FILED FEB 16 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD FEB 16 2001
DEPUTY CLERK

**Background**

Richard J. Jacobson is the President and fifty-percent owner of Jake's Ltd., Inc., a Minnesota corporation that operates a business known as Jake's Bar ("Jake's"). Jake's is located at 15981 Clayton Avenue, Coates, Minnesota, a real estate parcel owned by Mr. Jacobson. Jake's has been in operation since January 1992 and has featured and continues to feature live nude dancing. Both Mr. Jacobson and Jake's Ltd., Inc. ("Plaintiffs") have brought suit against the City of Coates ("the City") for enacting zoning and licensing ordinances that allegedly violate the First and Fourteenth Amendments of the United States and Minnesota Constitutions.

In 1994, the City of Coates enacted Ordinance No. 21 which added Section 522 to the City's code for the regulation of "sexually-oriented businesses." At the time of enactment and to date, Jake's is the only business in Coates that qualifies as a sexually-oriented business. In relevant part, Ordinance No. 21 provided that a sexually-oriented business could only be located within an agricultural zone and could not be located within 750 feet of numerous specified structures, including other sexually-oriented businesses, single- or multi-family dwellings, residentially-zoned property, and public parks. The City's subdivision regulations required that the subdivision of agricultural land for conditional uses, of which the operation of Jake's was one, be subject to the City Council's discretionary requirement that a percentage of the land be dedicated for public park purposes. In addition, Sections 401 and 402 provided that any business in noncompliance with the City's zoning ordinances at the date of enactment "shall be terminated and become illegal on and after December 31, 1996." As of the enactment, Jake's was in violation of the City's zoning laws because it was and continues not to be located within an agricultural district, and it was and remains in violation of the 750 foot distance requirements.

In December 1996, the Plaintiffs brought suit against the City challenging the constitutionality of Ordinance No. 21. Minnesota District Court Judge Kyle found that Ordinance No. 21 was unconstitutional because it did not provide for any space within the City where Jake's could be legally relocated. Judge Kyle found that the provision, as written and in conjunction with the subdivision ordinances, granted too much discretion to the City Council. If the Council required a particular subdivision of agricultural land to designate a percentage to public park development, then a sexually-oriented business could not locate there without violating the 750 foot distance requirement, and therefore, could not locate anywhere legally within the City of Coates. Judge Kyle noted in his opinion that the unconstitutionality of the ordinance could be remedied by providing for a required fee for park development as an alternative to actual land designation. Such a provision shifted the discretion from the City Council to the private land developer.

In 1998, the City enacted two additional ordinances. Ordinance No. 31 established the discretionary fee subdivision provision suggested by Judge Kyle, and it eliminated the mandatory park-land designation requirement. Ordinance No. 32 required that non-conforming sexually-oriented businesses terminate their uses at the existing location by December 31, 1999. These ordinances were intended by the City to address the Plaintiffs' challenges to the earlier ordinances. In enacting Ordinance Nos. 31 and 32, however, the City failed to provide published notice of the relevant public council meeting as required under Minn. Stat. § 462.357, subd. 3.[1]

---

[1] Minn. Stat. Sec. 462.357, Subd. 3 states in pertinent part:

> No zoning ordinance or amendment thereto shall be adopted until a public hearing has been held thereon by the planning agency or by the governing body. A notice of the time, place, and purpose of the hearing shall be published in the official
> (continued...)

Nevertheless, the Plaintiffs and their council were in attendance at the meeting. In addition, the City did not reenact Ordinance 21 nor include its substantive regulation of sexually-oriented businesses in either of the two new ordinances.

On December 13, 1999, the City enacted Ordinance No. 36 which contained numerous licensing and operating provisions relevant to sexually-oriented businesses. In relevant part, the licensing provisions of Ordinance 36 provide that: (1) within twenty days of receiving a completed license application, the City Clerk must verify all information and conduct any necessary investigation, including the ordering of criminal background checks; (2) within fifteen days after the completion of the verification and investigation, the City Clerk must accept or deny the license application; (3) within twenty days of receipt of notice of the Clerk's decision, an applicant may appeal to the City Council; (4) within twenty days of receipt of the appeal, a hearing before the City Council shall take place; (5) during the application process, an appeal to the City Council, and pending a final determination upon appeal to a court of law, an applicant operating a business not previously subject to the license provisions may remain in operation; (6) an applicant with a criminal history containing a felony or gross misdemeanor relating to sex offenses, obscenity offenses, or adult uses in the past five years shall be ineligible for licensure; and (7) the licensing fee shall be $2,500.00, $2,000.00 for the license and $500.00 for the investigation fee. In addition, one provision imposed a six-foot distance requirement between dancers and patrons. Another provision prohibited dancers from soliciting tips from customers and patrons from providing any gratuity to the dancers.

---

[1](...continued)
newspaper of the municipality at least ten days prior to the day of the hearing.

Plaintiffs initiated the current action on December 29, 1999, challenging Ordinances 31, 32, and 36 on the grounds that: (1) the constitutional deficiency of Ordinance 21 identified by Judge Kyle could not be cured by an amendment to the park dedication provision when the entire ordinance was found to be void; (2) Ordinances 31 and 32 were enacted in violation of the state public hearing requirements contained in Minn. Stat. § 462.357; and (3) the provisions of Ordinance 36 relating to licensing constitute an improper prior restraint on protected expression and those relating to operation were content-based, all in violation of the First Amendment.

On May 18, 2000, the City adopted Ordinance 39 which amended the licensing provisions so that sexually-oriented businesses not previously required to obtain a license could continue to operate pending the judicial outcome of any litigation related to the denial of a license, in addition to any appeals before the City Council. On July, 10, 2000, subsequent to a public hearing on June 12, 2000, the City adopted Ordinances 40 and 41 consistent with state procedural rules. *See* Minn. Stat. § 462.357, subd. 3. In pertinent part, Ordinance 40 replaced Ordinance 21 and extended the amortization period until January 31, 2001, and Ordinance 41 substantively replaced Ordinance 31.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Issues**

a. Ordinances 40 and 41: Sexually-oriented Businesses and Subdivision

i. Plaintiffs' Motion for Attorney's Fees

Counts I and II are dismissed as moot because of the enactment of Ordinances 40 and 41.[2] Plaintiffs argue, however, that the current litigation prompted the City's action to render such claims moot, and thus, Plaintiffs are entitled to their reasonable costs, disbursements, and attorney's fees under 42 U.S.C. § 1988. The Court disagrees.

Under 42 U.S.C. § 1988, a plaintiff who prevails in its action to enforce a § 1983 claim may be awarded reasonable attorney's fees as part of costs.[3] Because the outcome of claims I

---

[2] Count I claims the illegality of the zoning provisions under state law; and, Count II claims the unconstitutionality of the zoning and amortization provisions.

[3] 42 U.S.C. § 1988 states in pertinent part that:

(continued...)

and II was determined prior to trial, however, the applicability of § 1988 must be examined under what is known as the "catalyst theory." The "catalyst theory," which has been routinely accepted by the Eighth Circuit posits that "[t]he plaintiff is a 'prevailing party' under section 1988 if his suit is a catalyst for the defendant's voluntary compliance, and the defendant's compliance was not gratuitous, meaning that the plaintiff's suit was neither 'frivolous, unreasonable, [n]or groundless.' " *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 17 F.3d 260, 262 (8th Cir.1994) (*quoting United Handicapped Federation v. Andre*, 622 F.2d 342, 347 (8th Cir.1980); *see also Tyler v. Corner Const. Corp., Inc.*, 167 F.3d 1202, 1205 (8th Cir. 1999) ("The catalyst theory, moreover, has always been advocated . . . where the defendant voluntarily granted the requested relief, rendering the lawsuit moot[.]"). A plaintiff, however, must prevail with respect to his or her federal civil rights claim(s) regardless of the outcome of related state law claims. *Warner by Warner v. Independent School Dist. No. 625*, 134 F.3d 1333, 1337 (8th Cir. 1998).

Because only certain counts are moot, the instant case is distinct from those where the voluntary action by the Defendant or a negotiated settlement has rendered the entire action moot. Nonetheless, the Court finds the catalyst theory applicable to its analysis here. Given the timing of the lawsuit and the corrective ordinance enactments, it is reasonable to infer that Plaintiffs' lawsuit was the catalyst to the favorable resolution of the relevant claims. The Court finds,

---

[3](...continued)

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

however, that Plaintiffs are not eligible for attorney's fees under § 1988 because the issues on which they prevailed were not related to their federal claims under 42 U.S.C. § 1983.

With respect to Plaintiffs' successful procedural challenges brought under Minn. Stat. § 462.357, Plaintiffs are ineligible for fees because they have only prevailed under state law. To the extent that Plaintiffs also challenge the constitutionality of the ordinances, Plaintiffs are also ineligible for fees. While such challenges certainly implicate federal law, Plaintiffs misinterpret the status of the relevant ordinances subsequent to the previous lawsuit and thus, their claim is meritless. Plaintiffs argue that, pursuant to Judge Kyle's decision, Ordinance 21 was unconstitutional and thus, the corrective amendment in Ordinance 31 was also unconstitutional. They contend that the enactment of Ordinances 40 and 41 corrected this discrepancy and was a direct response to their challenge.

To the contrary, Ordinances 40 and 41 were merely an exercise of the City's legislative function. Plaintiffs are correct in stating that Ordinance 21 was void as unconstitutional pursuant to Judge Kyle's decision. Consequently, however, Ordinance 31 was an amendment to an ordinance which effectively did not exist, thus rendering the amendment ineffective as well. Even if the amendment had been enforced against a party, it would not have violated the party's rights because it would have been entirely ineffective or inappropriately, but harmlessly, enforced as part of a theoretically constitutional ordinance. In essence, the City had no legislation, constitutional or not, covering the substance of Ordinances 21 and 31 from the time of Judge Kyle's decision until Ordinances 40 and 41 were enacted. The City's enactment of the two ordinances was an exercise of its legislative power rather than a purely ameliorative response to Plaintiffs' challenges as they would have the Court believe. Plaintiffs did not prevail on

federal claims as they were postured against an unconstitutional ordinance that simply did not exist, and thus, they are not eligible for attorney's fees under § 1983.

ii. Defendant's Motion for Declaratory Judgment

Defendant moves the Court to issue declaratory judgment on whether Ordinances 40 and 41 are constitutional. Defendant contends that Ordinances 40 and 41 are substantively identical to Ordinances 21, 31, and 32 with the addition of the constitutionally ameliorative amendment enacted in response to Judge Kyle's decision. Consequently, Defendant argues that the Court should render its decision relying on the doctrine of collateral estoppel, or alternatively finding that Plaintiffs' constitutional challenges are meritless. On the other hand, Plaintiffs contend that collateral estoppel should not apply here because the pertinent facts and law have changed since Judge Kyle's decision. In addition, Plaintiffs contend that declaratory judgment is inappropriate because, at the time of hearing, no controversy existed given the amortization period through January 31, 2001.

Declaratory judgment is an appropriate remedy when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant [its] issuance . . . ." *Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724, 727 (8th Cir. 1975). It is clear to this Court that the parties have adverse legal interests and that, upon expiration of the amortization ordinance, a substantial controversy will result.[4] The immediacy with which and reality that such a controversy will result is apparent from the litigation history between the parties. A clear pattern

---

[4] The Court is aware that given the timing of its decision, the period established by the amortization provision has already expired. Nonetheless, the Court's analysis would be no different had it issued its decision prior to the period's expiration.

has developed where Plaintiffs file a claim upon the sunset of whatever provision they are challenging. For these reasons, the Court finds this to be an appropriate case in which to issue a declaratory judgment.

Collateral estoppel is the doctrine which precludes the relitigation of issues previously decided in another lawsuit between the same parties. In order for the Court to rely on collateral estoppel, it would have to find that: (1) the parties to the second lawsuit are the same or in privity with a party to a previous lawsuit; (2) the issue to be precluded is identical to an issue in the prior lawsuit; (3) the issue to be precluded was actually litigated in the prior lawsuit; (4) the issue to be precluded was decided by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997).

It is clear to the Court that the issues and parties before it are identical to those that were fully litigated and decided by Judge Kyle. The only changes effectuated by the enactment of Ordinances 40 and 41 were: (1) the cure of procedural defects; (2) the enactment of a judicially-recommended, constitutionally curative amendment; (3) the extension of an already-existing amortization provision; and, as discussed previously, (4) the enactment of an ordinance mirroring the constitutionally sound provisions of Ordinance 21. The Court finds that issue preclusion is properly applied with respect to Plaintiffs' challenges to Ordinances 40 and 41 as they reflect the substance of previous Ordinances 21 and 31, with the exception of the amortization provision contained in Section 522.

To the extent that Plaintiffs' claims challenge the constitutionality of the amortization provision contained in Ordinance 40, the Court declines to apply collateral estoppel. The Defendant argues that because the amortization was included within Ordinance 21, but

invalidation of the entire ordinance was based solely on the subdivision provision, then by implication, the amortization was constitutionally valid. The Court would tend to agree. The Court, however, recognizes that the previous judgment did not directly address the constitutionality of the amortization provision, and thus, will undertake the appropriate analysis at this time.

The Eighth Circuit has upheld a similar amortization provision for sexually-oriented businesses. *Ambassador Books & Video, Inc. v. City of Little Rock, Ark.*, 20 F.3d 858, 865 (8th Cir. 1994) (upholding three-year amortization period for adult businesses). Moreover, the Eighth Circuit has upheld the application of content-neutral restrictions of sexually-oriented businesses when applied to businesses existing at the time of enactment. *See, e.g., Holmberg v. City of Ramsey*, 12 F.3d 140 (8th Cir. 1993); *Alexander v. City of Minneapolis*, 928 F.2d 278 (8th Cir. 1991). While the current ordinance is less than the three-year term upheld in *Ambassador Books*, it is markedly more than the immediate application upheld in *Holmberg* and *Alexander*. Based on precedent, the Court finds the current amortization provision to be constitutional, and the substantive ordinance provisions to which it applies to be constitutional as well.[5]

Plaintiffs contend that both the facts and law have changed since Judge Kyle's decision. The Court disagrees. Plaintiffs cite *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), for the proposition that when a city's actual experience with the secondary effects of a sexually-oriented business is contrary to the generally accepted studies documenting the negative secondary affects of such businesses, then there is no reasonable basis for the enactment of regulations. They contend that this is a change from *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377

---

[5] The Court need not reach Plaintiffs' severability argument given its finding of the constitutionality of the amortization provision.

(2000), which held that a local government's reasonable belief that the experience of other jurisdictions is relevant to the problem it is addressing is a sufficient evidentiary showing to support regulation implicating the First Amendment, and thus, not finding an original, community-specific determination to be necessary.

Plaintiffs appear to be relying primarily on Justice Souter's dissent in *Erie* where he does question the evidentiary basis required to support the city's enactment of an ordinance banning public nudity and requiring the use of g-strings and "pasties" at nude dancing establishments. *Erie*, 529 U.S. at 310-17. The *Erie* Court found that the city had made its evidentiary showing by implicitly relying on the experiences of other jurisdictions memorialized in the Court's earlier decision in *Renton*. While Justice Souter clearly believes that the Court should have been more demanding of the City, his argument also appears to caution that evidentiary requirements may depend upon the nature of the ordinance at issue and other relevant facts. In a footnote, he states that:

> The nature of the legislating institution might also affect the calculus. We do not require Congress to create a record in the manner of an administrative agency, and we accord its findings greater respect than those of agencies. We might likewise defer less to a city council than we would to Congress. The need for evidence may be especially acute when a regulation is content-based on its face and is analyzed as content-neutral only because of the secondary effects doctrine. And it may be greater when the regulation takes the form of a ban, rather than a time, place, or manner restriction.

*Id*, at 311, n.1 (citations omitted). Justice Souter's argument pertains to the specific facts of *Erie* and what he saw as a lack of evidence that establishments featuring dancers with pasties would impact the surrounding neighborhoods any differently than those featuring entirely nude dancers. However, the ordinances at issue in the instant case more neatly fit into the category of time, place, and manner restrictions and thus, do not clearly implicate Justice Souter's concerns.

Nonetheless, the more appropriate application of *Erie* is to follow the majority's opinion which states, unequivocally, that "the evidentiary standard described in *Renton* controls here." *Erie*, 529 U.S. at 297. In *Erie*, the Court found that "the [city] could reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood." *Erie*, 529 U.S. at 297. The Court went on to recognize that the City of Erie created findings of its actual experience which the sexually-oriented business failed to rebut, thus providing further evidentiary support for its ordinance. While it had the opportunity to do so, however, the Court did not find such additional evidentiary proof to be necessary.

Under *Erie*, it is clearly appropriate for the City of Coates to have relied on the experiences of other communities and even the discussion of secondary effects discussed in *Renton* in order to justify the enactment of the ordinances at issue. Plaintiffs argue, however, that because, after the original enactments, the City evaluated its own experience in addition to the originally relied upon studies of other communities, then, necessarily, the facts have changed. They go on to state that because they can minimize the City's findings of criminal incidents and prosecutions related to Jake's, then the City's actual experience is, in fact, contradictory to the generally accepted relationship of secondary effects and sexually-oriented businesses. Moreover, Plaintiffs have challenged the characterization of certain findings and attempted to explain statistics as presenting an inflated view of the number of incidents actually occurring. The Court disagrees. The City was not required to submit findings related to its actual experience. Even subject to Plaintiffs' challenges, the City's findings still present evidence of secondary effects. The law, as it stands, clearly allows a community to reasonably restrict sexually-oriented businesses within it without requiring that the community actually experience the secondary

effects such restrictions are authorized to prevent. Thus, Plaintiffs' arguments on this issue must also fail. For the reasons stated, the Court finds Ordinances 40 and 41 to be constitutional.

b. Ordinance 36: Licensing and Other Restrictions[6]

i. Licensing

Plaintiffs challenge the licensing provisions on several grounds claiming that: (1) there is no reasonable time limit to regulate when a criminal background check must be completed; (2) the stay provision insufficiently applies only to businesses not previously subject to the licensing provisions; (3) the requirement of a criminal background check is unconstitutional; and (4) because the licensing fees are related to the purported cost of criminal background checks and related costs, the fee itself is also unconstitutional.

Municipalities are generally authorized to maintain licensing schemes in regulation of sexually-oriented businesses. The Supreme Court, however, has determined that without proper safeguards, such schemes can constitute unconstitutional prior restraint on expression. *FW/PBS, Inc., v. City of Dallas*, 493 U.S. 215 (1990). In *FW/PBS*, a majority of the Court held that a proper licensing scheme must provide: (1) a specified brief period of time for any restraint in place prior to judicial review; and (2) expeditious judicial review. *FW/PBS*, 493 U.S. at 1034 (relying on the requirements set forth in *Freedman v. State of Maryland*, 380 U.S. 51 (1965)). There remains a split in the circuits as to whether the Supreme Court's requirement of judicial

---

[6] Plaintiffs only briefly address this issue in their Memorandum, yet they incorporate by reference argument on this issue that was included in their briefing papers submitted to a Minnesota state court for a temporary injunction and later to this Court as an attachment to the Defendant's Notice of Removal. While the Court has evaluated all arguments submitted, the Court views the Plaintiffs' action as an improper attempt to circumvent the local rules on length of briefing papers and an inconsiderate, unprofessional affront to the Court and the opposing party.

review refers to a final judicial determination or mere access to the judiciary. *Compare Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097 (9th Cir. 1998) (judicial decision required); *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir. 1995) (judicial decision required); *11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.*, 58 F.3d 988 (4th Cir. 1995), *en banc,* (judicial decision required) *with Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251 (11th Cir. 1999) (judicial review sufficient); *TK's Video, Inc. v. Denton County, Tex.*, 24 F.3d 705 (5th Cir. 1994) (judicial review sufficient); *Graff v. City of Chicago*, 9 F.3d 1309 (7th Cir. 1993), *en banc,* (common law writ of certiorari procedure sufficient); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.*, 984 F.2d 1319 (1st Cir. 1993) (judicial review sufficient). The Eighth Circuit has yet to address this issue. The Supreme Court had granted certiorari on this issue, but recently withdrew its grant because the sexually-oriented business in the underlying case withdrew its application for a license rendering the issue moot. *City News and Novelty, Inc. v. City of Waukesha*, 120 S. Ct. 2687 (2000), *cert. dismissed by, City News and Novelty, Inc. v. City of Waukesha*, 121 S. Ct. 743 (2001). Even if a prompt judicial determination is what is required, a municipality can rectify the unconstitutional delay or prior restraint by staying the enforcement of relevant ordinances pending the judicial determination. *11126 Boulevard*, 58 F.3d at 1001 n.18.

Plaintiffs' first and second challenges can be considered together. Simply requiring that a criminal background check be ordered does not guarantee that such investigation will be completed within the reasonable time period constitutionally required and, in this case, found to be provided by the City. The Court recognizes that the City has minimal, if any, control over how quickly a criminal background check will be completed. It is compliance with the second requirement of *FW/PBS*, however, that could remedy this concern and that Ordinance 36 as

amended by Ordinance 39 currently provides. Section 509.8 clearly stays the enforcement of the remaining provisions for businesses not previously subject to the licensing provisions of which Jake's is one. Given that the City's licensing scheme is newly enacted and yet to be implemented, there are currently no businesses previously subject to its provisions and thus unprotected by the stay provision.

Plaintiffs express concern that, even if their business were to become licensed, that the City would likely unreasonably revoke the license rendering Jake's unprotected by the stay provision as it now stands. There is no evidence before the Court that the City would revoke a license without proper grounds. Plaintiffs allege that such evidence can be implied from the alleged grant of unbridled discretion to the City through section 508.17(A)(5), which provides, in part, for suspension of licenses if the licensed business is conducted "in such a manner as to constitute a breach of the peace or to constitute a menace to the health, safety, or general welfare of the community." The Court finds, however, to the extent that this clause is construed to refer to conduct constituting a violation of relevant state law or regulation, such as crimes or regulations pertaining to public health and safety, public misconduct, or nuisance, then the provision is objective and reasonable. *See*, *e.g.*, Minn. Stat. § 299L, *et seq.* (regulating gambling), 609.66 *et seq.* (crimes against public safety and health), and 609.705, *et seq.* (crimes of public misconduct and nuisance). Plaintiffs' current concerns would be more appropriately directed at the lack of stay protection provided to businesses up for yearly license renewal as set forth in section 508.11. Nonetheless, there are no businesses who currently would be deprived of the procedural protections required under *FW/PBS*. Thus, the Court finds the licensing scheme to be constitutional as currently applied to businesses not previously subject to the licensing provisions.

ii Criminal History Disqualification Provision

Plaintiffs also challenge section 508.10 (5) which establishes an applicant's criminal history as a potentially disqualifying factor. It provides that an applicant with a five-year-old or less felony, gross misdemeanor, or misdemeanor conviction relating to "sex offenses, obscenity offenses, or adult uses" is ineligible for a license. The Court finds the provision to be sufficiently related to the City's reasonable purpose of limiting the secondary effects of sexually-oriented businesses. *FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298, 1304-05 (5th Cir. 1988) *aff'd in part and vacated in part on other grounds*, 493 U.S. 215 (1990). With respect to crimes of sex offenses and obscenity offenses, the Court finds there to be a substantial relationship between the nature of the convictions and the secondary effects to be regulated by the ordinance. *Id.* To the extent that the term "adult uses" is construed to refer to state laws prohibiting the operation of certain adult businesses and/or the participation in certain adult activities, such as Minn. Stat. §§ 609.33, 617.33, *et seq.* (regulating disorderly houses and houses of prostitution), the Court also finds a substantial relationship between the nature of the convictions and the secondary effects.

Moreover, the fact that the ordinance includes a five-year time period eliminates the concern that the City is unreasonably and completely eliminating the first amendment rights of a particular group of people. *See City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463 (6th Cir. 1986), *cert. denied*, 479 U.S. 915 (1986) (invalidating law requiring revocation of license for distributors of adult-oriented materials upon judicial determination of prior distribution of obscenity); *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980) (invalidating disclosure and disqualification provisions based in part upon prior criminal conduct). While the two may appear inextricably linked, it is clear to the Court that the provision is aimed at

regulating the secondary effects rather than the protected expression. The provision is intended to control the crime that is potentially associated with sexually-oriented businesses and reasonably regulates the credentials of those who will be operating and presumably responsible for preventing the manifestation of secondary effects at their sexually-oriented business. For the reasons stated, the Court finds the disqualification provision to be constitutional and thus, the related disclosure and fee provisions to be constitutional as well.

iv. Distance and Tip Restrictions

Ordinance 36 also prohibits patrons and dancers from being within six feet of each other and from providing or soliciting tips. In their complaint, Plaintiffs challenge the relevant provisions as "impermissible content-based censorship of constitutionally protected speech." During oral argument, Plaintiffs' argument on these issues focused on the financial impact to the business and, ultimately, to the opportunity to maintain a commercial avenue for such expression.

While the law remains uncertain as to the degree of protection nude dancing should receive, the Supreme Court has held that it is indeed a protected form of expression. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991) (concluding that nude dancing "is expressive conduct within the outer perimeters of the First Amendment, though . . . only marginally so"). A municipality may regulate a protected form of expression, such as nude dancing, provided that the restriction is content-neutral, reasonably affecting the time, place, and/or manner of the expression. *See Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984). A reasonable content-neutral restriction is such that: (1) the regulations are within the constitutional power of the government; (2) the regulations further an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free

expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968) (establishing test for evaluating restrictions on symbolic speech); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (establishing three-factor, content-neutral test for restriction of expression in public forum).[7]

The City of Coates was well within its constitutional powers to manifest its concerns through legislation and to exercise its police powers for the protection of public health and safety. Moreover, the City has a substantial government interest in regulating the industry of sexually-oriented businesses, given the social concerns attendant to such businesses. While the restrictions at issue may affect the manner in which dancing occurs and even limit the overall capacity of a sexually-oriented business, sufficient opportunity remains for the dancers to exercise their protected expression satisfying the requirement that the regulation be narrowly tailored. In fact, the ordinance here is more liberal than other like ordinances that have been upheld by courts. *See, e.g., Colacurcio v. City of Kent*, 163 F.3d 545 (9th Cir. 1998) (holding ten-foot distance requirement as content-neutral despite elimination of table dancing as form of expression). The Court finds that the provisions here are reasonable time, place, and manner restrictions and thus, not in violation of the First Amendment.

---

[7] The *Ward* test requires a municipal ordinance restricting expression in a public forum to be: (1) content-neutral (2) narrowly tailored to serve a significant government interest; and (3) leaving open ample alternative channels for communication of the information. While the Supreme Court applied this test to a private establishment in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) and concluded in *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) that the *Ward* test embodied the principles of *O'Brien*, it nonetheless proceeded to analyze the claims in *Barnes* and later in *Erie v. Pap's A.M.*, 529 U.S. 277 (2000) under *O'Brien*. Thus, the Court will adopt the *O'Brien* test for its analysis here.

For the reasons stated, **IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' Motion for Summary Judgment (Doc. No. 7) is **DENIED;**

   a. Plaintiffs' request for attorney's fees as to Counts I and II is **DENIED**;

   b. Ordinances 40, 41, and 36 as amended by Ordinance 39 are constitutional.

2. Defendant's Motion for Summary Judgment (Doc. No. 12) is **GRANTED;**

   a. Ordinances 40, 41, and 36 as amended by Ordinance 39 are constitutional.

3. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 16th, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: **FEB 16 2001**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*