# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-2931
No. 02-3835

Jake's, Ltd., Inc.; Richard J. Jacobson, *
*
Plaintiffs - Appellants, * CV00-192 DWF/AJB
* Appeals from the United States
v. * District Court for the
* District of Minnesota.
City of Coates, *
*
Defendant - Appellee. *

Submitted: October 22, 2003

Filed: January 30, 2004

Before LOKEN, Chief Judge, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.

LOKEN, Chief Judge.

After the City of Coates, Minnesota, enacted zoning ordinances barring Jake's, Ltd., from continuing to offer live nude dancing at its existing location, Jake's and its owner, Richard J. Jacobson (collectively, "Jake's"), commenced this action, alleging that the ordinances violated their First Amendment rights. The City removed the action and counterclaimed for declaratory and injunctive relief. The district court dismissed Jake's complaint with prejudice. Jake's Ltd. v. City of Coates, 176 F. Supp. 2d 899, 901 (D. Minn. 2001). Three weeks later, at the City's request, the court

FILED MAR 25 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

amended its final order to enjoin Jake's "from operating a sexually-oriented business at their current location" in violation of the "relevant ordinances of the City of Coates." Jake's appealed the dismissal of its First Amendment claims. We affirmed in all relevant respects. Jake's Ltd. v. City of Coates, 284 F.3d 884 (8th Cir.), cert. denied, 537 U.S. 948 (2002). Jake's did not appeal the scope of the district court's injunction, even though federal courts have long disfavored "[b]lanket injunctions against general violation of a statute." Beatty v. United States, 191 F.2d 317, 321 (8th Cir. 1951); see Swift & Co. v. United States, 196 U.S. 375, 396 (1905).

The district court stayed its injunction pending Jake's prior appeal. When the stay expired on May 22, 2002, Jake's continued to offer live nude dancing. But Jake's eliminated the prior five dollar cover charge, instead charging a five dollar fee to park outside the establishment, regardless of whether a customer entered. In addition, Jake's began selling soft drinks outside instead of inside the building. The City filed a contempt motion. After a hearing, the district court held Jake's in contempt and ordered Jake's "to close the sexually-oriented business at 15981 Clayton Avenue in Coates" and to pay a civil contempt sanction of one thousand dollars per day for any future continued operation. In addition, finding that Jake's did not oppose the contempt motion "in good faith," the court ordered Jake's to pay the City costs and attorney's fees of $6,490.57. Jake's appeals these rulings in Case No. 02-2931.

A few days after the contempt order issued, Jake's reopened at the same location. The business no longer featured live nude dancing. Instead, bikini-clad dancers offered patrons "lap" or "couch" dances for twenty dollars and more private "VIP couch dances" for $140. After undercover law enforcement officers determined that these dances involved dancers rubbing their clothed breasts and groins on patrons' clothed genitals, the City again moved to hold Jake's in contempt for operating a sexually-oriented business on the premises. Finding clear and convincing evidence of willful and intentional violations of the court's prior orders, the district

court again held Jake's in civil contempt. Applying the $1,000-per-day penalty established in the first contempt order, the court ordered Jake's to pay $68,000 into court for the sixty-eight days it had operated in continued violation of the injunction. In addition, the court increased the prospective fine for future violations to two thousand dollars per day, granted judgment to the City for $601.57 in additional costs and an unpaid deficiency relating to the first contempt order, and ordered Jake's to "close the sexually-oriented business" at its current location and "reopen only when they have complied fully with this Order." Jake's appeals this second contempt order in Case No. 02-3835. We consolidated the appeals and now affirm in part and reverse in part.[1]

**The First Contempt Order.**

In Case No. 02-2931, Jake's challenges the district court's first contempt ruling and the award of attorney's fees and costs as a civil contempt sanction. Jake's first argues that, after eliminating the cover charge and the sale of soft drinks where the live nude dancers performed, it no longer engaged in operating a "sexually-oriented business" as defined in the City's zoning ordinances and therefore did not violate the court's injunction. The ordinances define different types of sexually-oriented businesses. Relevant here is the "adult entertainment facility" category, defined as:

> A building or space wherein an admission is charged for entrance or food or non-alcoholic beverages are intended for consumption and wherein may be observed live presentation or entertainment distinguished or characterized by an emphasis on matters depicting,

---

[1]Neither party challenges the district court's jurisdiction. The court had removal jurisdiction because Jake's complaint stated a colorable claim under federal law. It had jurisdiction over the City's state law counterclaim for injunctive relief because that claim was "part of the same case or controversy." 28 U.S.C. § 1367(a); see Moore v. N.Y. Cotton Exch., 270 U.S. 593, 607-10 (1926); Tullos v. Parks, 915 F.2d 1192, 1194-96 (8th Cir. 1990).

> describing or relating to specified sexual activities or specified anatomical areas as defined herein.

Jake's argues that its five dollar parking fee was not "an admission . . . charged for entrance" because the parking fee was charged for any use of the parking lot and because patrons could enter and watch the live nude dancing without paying the five dollar fee if they arrived on foot, by taxi, or parked elsewhere. Jake's argues that selling soft drinks for consumption outside the building was not the sale "wherein [live nude dancing] may be observed."

The district court rejected these contentions. It concluded that Jake's had continued to operate a sexually-oriented business within the meaning of the ordinance because "[t]he 'parking fee' is the functional equivalent of the admission charge Plaintiffs seek to avoid," and alternatively because "the mere relocation of non-alcoholic beverages from inside the bar to just outside the door does not change [the fact] that such beverages continue to be sold and are intended for consumption on the premises where nude dancing occurs." Noting that Jake's conceded it was operating a sexually-oriented business earlier in the litigation, the court held Jake's in contempt, refusing to allow Jake's "to dodge the force of the Court's orders by engaging in games of labeling and semantics."

We review the district court's decision to enter a civil contempt order for abuse of discretion, reviewing its factual findings for clear error. <u>Wycoff v. Hedgepeth</u>, 34 F.3d 614, 616 (8th Cir. 1994); <u>accord</u> <u>Mower County Human Servs. v. Swancutt</u>, 551 N.W.2d 219, 222 (Minn. 1996). The party seeking a contempt order bears the burden of proving facts warranting such relief by clear and convincing evidence. Because the contempt power is a "most potent weapon," we review the imposition of contempt sanctions "more searchingly" than their denial. <u>Indep. Fed'n of Flight Attendants v. Cooper</u>, 134 F.3d 917, 920 (8th Cir. 1998).

On appeal, Jake's argues that the district court failed to construe the zoning ordinances strictly in favor of the property owner, as Minnesota law requires. But the primary issue is whether Jake's violated the court's decree, not whether they violated the ordinances. In the proceedings leading up to that decree, Jake's conceded that live nude dancing was a "sexually-oriented business" within the meaning of zoning ordinances that prohibited conducting a sexually-oriented business at the location in question. Thus, when the district court rejected Jake's First Amendment attacks on the ordinances and granted the City injunctive relief, it obviously intended to enjoin Jake's from continuing to offer live nude dancing on the premises. Jake's post-decree conduct violated that core prohibition. The fact that the decree broadly and in our view improvidently incorporated entire ordinances by reference raises difficult issues that we must address in connection with the second contempt decree. But the breadth and potential ambiguity of the injunction do not undermine the district court's conclusion that the City demonstrated, by clear and convincing evidence, that Jake's acted in contempt of the injunction by continuing to offer live nude dancing, conduct Jake's had previously conceded would violate the ordinances.

Jake's further argues that the district court erred in awarding the City its attorney's fees and costs because Jake's opposition to the contempt motion had a basis in the ordinance and thus was made in good faith. In response, the City argues that even if Jake's had a good faith basis for opposing the contempt motion, we should still affirm the fee award because a lack of good faith need not be shown. In this circuit, "[a]lthough willfulness is not necessarily a prerequisite to an award of fees, it may properly be considered in deciding whether to tax costs and attorney's fees in an action to enforce compliance with an injunction." Hartman v. Lyng, 884 F.2d 1103, 1107 (8th Cir. 1989) (citation omitted); see McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); but see King v. Allied Vision, Ltd., 65 F.3d 1051, 1063 (2d Cir. 1995).

When an injunction has issued at the request of a government agency, an award of reasonable attorney's fees and expenses incurred by the agency in seeking to enforce the decree is a form of compensatory relief that is well within a district court's remedial discretion in civil contempt proceedings. See United States v. Rue, 819 F.2d 1488, 1495 (8th Cir. 1987). Here, Jake's argued that it did not violate the decree because it made minimal and tangential changes to the way it conducted an admittedly sexually-oriented business -- live nude dancing. The district court did not abuse its discretion in rejecting that argument as nothing more than an artful dodge and in compensating the City for its legal expenses in bringing the contempt motion. Accord Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, 103 F.3d 1007, 1017 n.14 (D.C. Cir. 1997).

**The Second Contempt Order.**

The second contempt order at issue in Case No. 02-3835 stands on different footing because the breadth of the district court's initial injunctive decree is essential to the court's finding that the decree was violated. As noted above, the decree enjoined Jake's "from operating a sexually-oriented business at their current location" if that would violate "relevant ordinances of the City of Coates." In other words, the decree commanded Jake's to obey local laws. As amended, the City of Coates Zoning Ordinance prohibits the conduct of "sexually-oriented businesses" at Jake's current location. The ordinance defines "sexually-oriented business" to include:

> an adult book store, adult body painting studio, adult companionship establishment, adult motion picture theater, adult entertainment facility, adult modeling studio, adult mini motion picture theater, or adult sauna as defined herein.

Thus, the injunction banned all of these activities *and* made Jake's noncompliance punishable by contempt. That is not a problem in reviewing the first contempt order:

Jake's conceded that the sexually-oriented business it conducted when the injunction was issued fell within one portion of the definition of an "adult entertainment facility" because live nude dancing constituted "live presentation or entertainment distinguished or characterized by an emphasis on . . . *specified anatomical areas* as defined herein." (Emphasis added.)

The second contempt order found that a different form of live entertainment violated the injunction -- clothed lap dances which, to violate the *ordinance*, must be found to be "live presentation or entertainment distinguished or characterized by an emphasis on matters depicting, describing, or relating to *specified sexual activities*." (Emphasis added.)[2] The district court found that the lap dances offered at Jake's fit this definition. Therefore, the court concluded, Jake's continued to be an "adult entertainment facility," which meant that Jake's continued to operate a sexually-oriented business in violation of the court's obey-the-law injunction. As the principal remedy for this civil contempt, the court imposed a fine of $68,000 for the sixty-eight days Jake's operated in this fashion after the first contempt order issued.

On appeal, Jake's does not argue that the underlying decree was too broad or vague to be enforced in this manner.[3] Although we believe the initial injunction should not have broadly incorporated the entire array of ordinances, it is far too late in the proceedings to find plain error on this ground. See Jacksonville Paper, 336 U.S. at 192. Instead, Jake's argues that the $68,000 fine must be reversed because it is a criminal contempt sanction imposed without the procedural protections of a

---

[2]The ordinances define "specified sexual activities" to include "fondling or other erotic touching of human genitals, pubic region or pubic hair, buttocks, or female breast or breasts."

[3]Jake's does argue that the City failed to prove that its lap dancers engaged in "specified sexual activities" within the meaning of the zoning ordinances incorporated by reference in the injunction. Given our resolution of the other issues on appeal, we decline to consider this issue.

criminal contempt proceeding, including, when applicable, a jury trial. Applying the Supreme Court's decision in International Union, United Mine Workers v. Bagwell, 512 U.S. 821 (1994), we agree.

Traditionally, contempt sanctions are civil if they are coercive and remedial, and criminal if they are punitive. In Bagwell, the Virginia state courts enjoined a union from engaging in a wide range of unlawful strike-related activities. In an initial civil contempt hearing, the trial court found 72 violations, fined the union $642,000, and declared that it would fine the union $100,000 for any future violent breach of the injunction and $20,000 for any future nonviolent breach. In seven subsequent civil contempt hearings, the court found over 400 additional violations and imposed $12 million in compensatory fines payable to the affected employers plus $52 million in fines payable to the State. The union appealed, arguing the $52 million were criminal fines that may only be imposed after a jury trial. This issue required the Court to consider in greater detail the distinction between coercive civil fines and punitive criminal fines. Although all nine Justices agreed in a majority and two concurring opinions that the fines in question were criminal in nature, they admitted that the distinction between civil and criminal contempt fines is "somewhat elusive." 512 U.S. at 830.

In framing this issue, the Court first noted that broad civil contempt powers are necessary to the judicial function but are subject to abuse because "civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." 512 U.S. at 831. To balance these competing concerns, greater procedural protections are granted those accused of indirect contempts, that is, contempts committed outside the presence of the court. But not all indirect contempts must be classified as criminal. In drawing the distinction between civil and criminal fines in Bagwell, the Court first focused on the nature of the inquiry required to determine whether the alleged contumacious conduct violated the court's prior decree:

> [I]ndirect contempts involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing.
>
> For a discrete category of indirect contempts, however, civil procedural protections may be insufficient. Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding. . . . Under these circumstances, criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power.

512 U.S. at 833-34.[4] The Court then turned to the remedial side of the inquiry, the nature of the fines at issue. The Court analyzed the magnitude of the fines, whether they were imposed to compensate an injured party, and if not, whether they were "determinate and unconditional" and therefore punitive in nature, or were capable of being avoided or purged by coming into compliance with the court's injunctive decree, which is the hallmark of a coercive civil contempt remedy. In discussing this aspect of the inquiry, the Court stated: "[T]he fact that the trial court announced the fines before the contumacy, rather than after the fact, does not in itself justify respondents' conclusion that the fines are civil or meaningfully distinguish these penalties from the ordinary criminal law." 512 U.S. at 836.

In this case, we conclude that both facets of the Bagwell analysis make the $68,000 fine criminal in nature. First, the injunction was complex, in that it enjoined Jake's from conducting any type of sexually-oriented business prohibited by the

---

[4]Focusing on this aspect of the inquiry, we concluded in United States v. Santee Sioux Tribe, 254 F.3d 728, 736 (8th Cir. 2001), that an injunction ordering the Tribe to close a tribal casino that was unlawfully operating "Class III" gaming devices was "not complex" for purposes of applying Bagwell. However, no specific contempt remedy was at issue in that case.

ordinances, not just the live nude dancing that Jake's had admitted was a sexually-oriented business in raising its First Amendment challenge. Given the breadth of the injunction, the City could have sought contempt remedies, for example, if Jake's had completely changed its operations to an "adult book store" or "adult motion picture theater" or "adult sauna." The change it in fact made -- from live nude dancing to clothed lap dancing -- was less dramatic but raised no less troublesome compliance issues. Determining whether this live entertainment by clothed dancers is "characterized by an emphasis on matters . . . relating to specified sexual activities" is a fact-intensive and, perhaps more importantly, controversial inquiry that may even raise additional First Amendment issues.

A violation of the City's Zoning Ordinance is punishable as a misdemeanor. If the City were to prosecute this new type of alleged violation in state court, Jake's would likely have a right to trial by jury. See MINN. STAT. § 609.03(3); MINN. R. CRIM. P. 26.01, subd. 1(1)(a); State v. Bjornson, 378 N.W.2d 4 (Minn. App. 1985). In these circumstances, we conclude the same procedural protections are necessary before a large unconditional fine is imposed in contempt proceedings for completed, as opposed to future, conduct.[5]

Second, looking at the nature of the remedy itself, Bagwell described the type of fine that is closely analogous to coercive imprisonment, which is a classic form of civil contempt remedy: "a [prospective] per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." 512 U.S. at 829. Here, the $68,000 fine imposed by the second contempt order was far different from this type of coercive remedy. The fine was substantial, it was payable into court, rather

---

[5]Our conclusion would likely be different if Jake's had continued to offer live nude dancing after the district court entered the first contempt order. In that case, the second contempt proceeding would involve conduct that was previously adjudged to be contumacious and was continued in defiance of a coercive prospective fine.

than to compensate the City,[6] and it was "determinate and unconditional," that is, not capable of being purged. The district court did not explicitly characterize the $68,000 fine as either civil or criminal; in any event, that would not be controlling. See Hicks v. Feiock, 485 U.S. 624, 631 (1988), followed in Bagwell, 512 U.S. at 838. As in Bagwell, we think it apparent that this substantial unconditional fine was essentially punitive in nature.

In Bagwell, the Supreme Court set out to reverse the tendency of lower federal courts and state courts to use the Court's prior decisions "to authorize a relatively unlimited judicial power to impose noncompensatory civil contempt fines." 512 U.S. at 830. At the end of its discourse, the Court expressly preserved the judicial power to "impose noncompensatory, petty fines . . . without conducting a jury trial" for contempts of even complex injunctions. And it did not disturb a court's power to levy serious fines for contempts of complex injunctions, but it held that this type of fine must be imposed "through the criminal contempt process." 512 U.S. at 839. Consistent with the Court's distinction, although we sympathize with the district court's view that its prior orders had been repeatedly disobeyed, we conclude that the court was required to afford Jake's the protections of a criminal contempt proceeding before imposing an unconditional $68,000 fine for conduct not previously adjudged to violate its broad and complex injunction.

**Conclusion.**

Having concluded that the district court erred by imposing a criminal contempt sanction without affording Jake's the protections of criminal contempt proceedings, our normal disposition would be simply to remand for further proceedings. However,

---

[6]Although the second contempt order included a finding that the City was entitled to "compensatory damages for reasonable attorney fees and costs," the City has made no attempt to quantify such expenses.

in this case, the court initially issued an injunction ordering Jake's to comply with wide-ranging zoning ordinances. This command to obey the law was overbroad under general equitable principles. See Swift & Co., 196 U.S. at 396; Beatty, 191 F.2d at 321. Moreover, issuing such a broad decree has now embroiled the district court in the ongoing task of enforcing local zoning ordinances, permitting the City to shift its day-to-day enforcement actions from the state courts to a federal court long after the initial First Amendment issues were resolved. We conclude that the district court should now withdraw from this discretionary assumption of continuing supplemental jurisdiction. Accordingly, in No. 02-2931, we affirm the initial contempt orders insofar as they held Jake's in contempt for continuing to offer live nude dancing at 15981 Clayton Avenue in the City of Coates and imposed a compensatory contempt sanction of $6,490.57. In No. 02-3835, we reverse the court's contempt order dated October 4, 2002, except the portions ordering Jake's to pay an additional $601.57 in compensatory damages for the first contempt, and we remand to the district court with directions to modify its injunction so that the decree only prohibits Jake's from conducting at the above location the specific sexually-oriented business at issue when this litigation began -- live nude dancing.

______________________________

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans